IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BENJAMIN FORREST CARTER,

     Plaintiff,

v.                                                    Civil Action No. 3:23cv06

LT. F. RIGBY,

     Defendant.

## MEMORANDUM OPINION

Benjamin Forrest Carter, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action in which he alleges that Defendant Rigby violated his First Amendment rights[1] by retaliating against him during his incarceration in Sussex II State Prison ("Sussex II"). The Court construes Mr. Carter to raise the following claim:

> Claim One: Defendant Rigsby "violated [Mr. Carter's] First Amendment right . . . to be free from retaliation for using his protected activi[ty] of submitting complaints . . . about [Defendant] Rigsby's threats and harassment." (ECF No. 1, at 8.)[2]

Mr. Carter requests monetary damages. (ECF No. 1, at 9.) The matter is before the Court on the Motion for Summary Judgment filed by Mr. Carter, (ECF No. 21), and the Motion for Summary Judgment filed by Defendant Rigsby, (ECF No. 36). Defendant Rigsby provided Mr. Carter with *Roseboro*[3] notice. (ECF No. 38.) Mr. Carter has filed an Opposition brief. (ECF No. 45.) For

---

[1] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court also corrects the spelling, capitalization, punctuation, and removes the emphasis in the quotations from the parties' submissions.

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

the reasons set forth below, Mr. Carter's Motion for Summary Judgment, (ECF No. 21), will

be DENIED, and Defendant Rigsby's Motion for Summary Judgment, (ECF No. 36), will

be GRANTED.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility to inform the

court of the basis for the motion, and to identify the parts of the record which demonstrate the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

summary judgment motion may properly be made in reliance solely on the pleadings,

depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation

marks omitted).  When the motion is properly supported, the nonmoving party must go beyond

the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

(quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences

in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835

(4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, a

mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251

(citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).  "[T]here is a

preliminary question for the judge, not whether there is literally no evidence, but whether there is

any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the

2

onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Similarly, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of her Motion for Summary Judgment, Defendant Rigsby has submitted her own affidavit, (ECF No. 37-1, at 1–5); relevant disciplinary records for Mr. Carter, (ECF No. 37-1, at 6–21); and the Virginia Department of Corrections Operating Procedure pertaining to Offender Discipline, (ECF No. 37-1, at 22–61).

At this stage, the Court is tasked with assessing whether Mr. Carter "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Mr. Carter filed an Affidavit with his

Opposition. (ECF No. 45, at 14–18.)[4]  While Mr. Carter's Complaint is not properly sworn,[5] the

Court will consider the various institutional records attached to it.  (ECF Nos. 1-1, 1-2, 1-3, 1-4.)

---

[4] The Opposition itself is not admissible evidence.  The Court informed Mr. Carter previously:  "[T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury.  Rather, any verified allegations must be set forth in a separate document titled 'Affidavit' or 'Sworn Statement,' and reflect that the sworn statements of fact are made on personal knowledge and the affiant is competent to testify on the matters stated therein."  (ECF No. 27, at 2.)

To the extent that Mr. Carter raises new allegations about Defendant Rigsby in his Opposition, a plaintiff may not introduce new allegations or claims in an opposition brief.  *See Barclay White Skansa, Inc.v. Battelle Mem'l Inst.*, 262 Fed. Appx. 556, 563 (4th Cir. 2008) (explaining that a plaintiff may not amend their complaint through briefs in opposition to a motion for summary judgment); *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, Inc., 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); *Equity in Athletics. Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs").

Finally, Mr. Carter's Affidavit contains many statements that are of no value in assessing the propriety of summary judgment.  Specifically, Mr. Carter's statements are either conclusory, immaterial, or disagree with arguments made by Defendant Rigsby without support from the record.  Mr. Carter's conclusory and inadmissible assertions will not be considered in evaluating the Motion for Summary Judgment.  Nevertheless, when appropriate, the Court has addressed Mr. Carter's statements in footnotes.

[5] At the conclusion of his Complaint, Mr. Carter included the following verification:

> I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to those matters alleged on information and belief, and as to those, I believe them to be true.  I verify under penalty of perjury that the foregoing is true and correct.

(ECF No. 76, at 27.)  Mr. Carter's verification is virtually identical to one that this Court previously rejected in *Hogge v. Stephens*, No. 3:09CV582 (JRS) , 2011 WL 2161100, *2–3 (E.D. Va. June 1, 2011), and is substantially similar to one that the United States Court of Appeals for the Fourth Circuit found to be lacking in *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001).  Where a verification is made "upon [ ] information and belief," it "is insufficient for the purposes of opposing a motion for summary judgment" because such verification "avoids the possibility of perjury." *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991); *see also Causey v. Balog*, 162 F.3d 795, 803 n.4 (4th Cir. 1998) (citations omitted) ("Because [the court] cannot assess whether [the plaintiff] had first[-]hand knowledge of [the alleged] facts or whether he [or she] is competent to testify to them, [the court] cannot consider them in [its summary judgment] review.").  As such, the Court must consider the contents of Mr. Carter's Complaint as "mere pleading allegations." *Hogge*, 2011 WL 2161100, at *3 (quoting *Walker*, 11

In light of the foregoing submissions and principles, the following facts are established

for the Motion for Summary Judgment.  All permissible inferences are drawn in favor of

Mr. Carter.

## II.  Undisputed Facts

### A.     March 21, 2022 Disciplinary Charge

Defendant Rigsby is an Administrative Lieutenant in the Restorative Housing Unit

("RHU") of Sussex II.  (ECF No 37-1 ¶ 1.)  On March 21, 2022, at around 2:00 p.m., Mr. Carter

---

F. App'x at 274).  Consequently, the Complaint fails to constitute admissible evidence. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

After Defendant Rigsby filed her Motion for Summary Judgment, Mr. Carter filed an Amended Verified Complaint that he had notarized. (ECF No. 50.) By Memorandum Order entered on March 4, 2024, the Court explained that at that juncture, Mr. Carter required leave of court to amend his complaint and he did not request leave to amend, therefore the Amended Verified Complaint was not properly before the Court. (ECF No. 52, at 2.) The Court explained that if Mr. Carter wished to amend his complaint, he must do so in accordance with Rule 15. (ECF No. 52, at 2.) Instead of availing himself of the opportunity to file an amended complaint, Mr. Carter filed a Motion for Leave to File An Amended Complaint, (ECF No. 54), without an accompanying proposed amended complaint, an Objection to the March 4, 2024 Memorandum Order, (ECF No. 55), and three other miscellaneous motions, (ECF Nos. 56, 59, 61). By Memorandum Order entered on April 12, 2024, the Court overruled Mr. Carter's various objections, and explained that there was no error in the March 4, 2024 Memorandum Order, and "[e]ven considering his newest Motion for Leave to File An Amended Complaint, Mr. Carter has still not filed a proper motion to amend, with a separate brief in support of the motion to amend, and with a proposed amended complaint attached. Mr. Carter has also not explained why, at this late juncture, he should be permitted to file an amended complaint." (ECF No. 62, at 3.) The Court denied the Motion for Leave to File an Amended Complaint without prejudice. (ECF No. 62, at 3.) Once again, instead of seeking appropriate leave to amend, Mr. Carter filed a "Reconsideration- Objection to ECF No. 62," that the Court construed as a motion filed under Federal Rule of Civil Procedure 54(b) ("Rule 54(b) Motion,"). (ECF No. 64.) In denying the Rule 54(b) Motion, by Memorandum Order entered on June 13, 2024, the Court explained that "[t]he problem here is not with the Court's rulings, but with Mr. Carter's refusal to comply with the Rules of the Court, the Federal Rules of Civil Procedure, and the Court's specific directions. Each motion that Mr. Carter complains was unfairly denied was *without prejudice*. Mr. Carter has been provided several opportunities to file a proper proposed amended complaint that complies with the Local Rules for the Eastern District of Virginia and the Federal Rules of Civil Procedure, but he has yet to file one." (ECF No. 70, at 5.) To date, Carter has not filed such a complaint.

approached the control booth to ask for gloves and trash bags. (ECF No. 45, at 14.) Defendant

Rigsby "was working lower control when [Mr.] Carter began angrily yelling to let him out of his

cell 3B-18 to work." (ECF No. 37-1 ¶ 4; ECF No. 37-1, at 6.) Defendant Rigsby was not aware

that there were workers in 3B of the RHU. (ECF No. 37-1 ¶ 4.) Defendant Rigsby checked the

CORIS database which reflects whether an inmate is employed. (ECF No. 37-1 ¶ 4.) CORIS

did not reflect that Mr. Carter was assigned a job and he was not listed as employed. (ECF

No. 37-1 ¶ 4.) Defendant Rigsby spoke with Unit Manager Branch who informed her "that [Mr.]

Carter was an unofficial pod worker per a special arrangement and he should be let out of his

cell." (ECF No. 37-1 ¶ 4.) Defendant Rigsby let Mr. Carter out of his cell to perform his pod

duties, and "[Mr.] Carter stormed out of his cell and approached the control booth in an

aggressive manner yelling, 'why I didn't let him the fuck out of the cell.'" (ECF No. 37-1 ¶ 4.)

Defendant Rigsby told Mr. Carter that inmates assigned to the RHU "were not going to be let out

of their cells based on their word." (ECF No. 37-1 ¶ 4.) At that point, Mr. Carter continued to

yell at Defendant Rigsby aggressively. (ECF No. 37-1 ¶ 4.)[6] Defendant Rigsby wrote a

disciplinary charge against him for "'Vulgar or insolent language directed toward an employee,

or directed toward, or in the presence of, persons who are not an offender or employees of the

DOC' (offense code 222)," which she submitted at 2:31 p.m. the same day. (ECF No. 37-1 ¶ 4;

ECF No. 37-1, at 6–8.)

---

[6] Mr. Carter states: "I did not threaten her, curse at her aggressively, or intend to disrupt the orderly operations of the facility." (ECF No. 45, at 14.) However, "conclusory allegations or denials" such as Carter's, "without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037 (citing *Strickler*, 989 F.2d at 1383); *see United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (concluding that "[a]iry generalities [and] conclusory assertions . . . [do] not suffice to stave off summary judgment . . . ." (citation omitted) (internal quotation marks judgment)).

Defendant Rigsby avers that she filed the disciplinary charge against Mr. Carter because he violated institutional rules, and that she did not charge him for retaliatory reasons. (ECF No. 37-1 ¶ 5.) As she states: "Inmates are required to follow the rules and in this situation, [Mr.] Carter did not." (ECF No. 37-1 ¶ 5.)

The charge was never served on Mr. Carter and became a nullity. (*See* ECF No. 37-1, at 6.)

**B.     Mr. Carter's March 29, 2022 Request and Complaint**

On March 29, 2022, Mr. Carter submitted an Offender Request form, directed to the Grievance Coordinator, stating: "That I placed this written complaint against [Defendant] Rigsby in the institutional mail to be turned in on March 29, 2022 about her harassing me and denying me my IM-2 privileges and threatening me." (ECF No. 1-1, at 1.) The Offender Request was picked up and received in the Operations Office on April 4, 2022. (ECF No. 1-1, at 1.) On March 29, 2022, Mr. Carter also submitted a Written Complaint naming Defendant Rigsby stating:

> I have been subjected to retaliation. She has threatened to make sure I don't come out of my cell for recreation, not give me my weekly canteen by not turning in my bubble sheets, and make sure that I no longer have my IM-2 work privilege for reporting this. If any false charges are written after the date below, I am retaining my 1st Amend. right in federal court. She constantly threatens to take my privileges because she says that I'm not special and she knows people.

(ECF No. 1-1, at 2.) This Written Complaint was received in the Operations Office on April 4, 2022, and on April 8, 2022, J. Branch responded: "Sir, you were suspended due to a charge received. You received your commissary." (ECF No. 1-1, at 2.) The record does not reflect what the referenced disciplinary charge was for, or which institutional staff member filed it.

C.   **March 30, 2022 Disciplinary Charge**

On March 30, 2022, at around 3:20 p.m., Defendant Rigsby was passing out commissary in Mr. Carter's pod. (ECF No. 37-1 ¶ 6; ECF No. 37-1, at 9.)  When Defendant Rigsby tried to give Mr. Carter his commissary items, he stated "I am not signing for that shit, put refused, because that's not the right shit." (ECF No. 37-1 ¶ 6.)  Mr. Carter then stated loudly to his pod, "This bitch didn't turn in our commissary sheets everyone." (ECF No. 37-1 ¶ 6.)  Defendant Rigsby explained to Mr. Carter that all of the commissary sheets were turned in but that food orders come in on the first of the month and it was not the first of the month yet. (ECF No. 37-1 ¶ 6.)  Mr. Carter continued to be "disruptive and continued to rile up the whole pod so that the whole pod refused [their] commissary orders." (ECF No. 37-1 ¶ 6.)  Mr. Carter's behavior violated operating procedure, so Defendant Rigsby wrote a disciplinary charge against Mr. Carter for "Vulgar or insolent language," and submitted it at 3:22 p.m. (ECF No. 37-1 ¶ 7; ECF No. 37-1, at 9.)[7]

Defendant Rigsby explains that:

> During the disciplinary hearing, the Hearing Officer made the decision to dismiss this charge because another inmate stated that he made the statements regarding commissary. I was not present at [Mr.] Carter's disciplinary hearing for this charge and was not involved in the decision to dismiss the charge. At the time I placed the charge against [Mr.] Carter, I clearly saw that he was the one disrupting the pod and making the statements about the commissary. I did not mistakenly identify [Mr.] Carter. I know [Mr.] Carter's voice and it was he who was making the statements. Inmates will use commissary to barter for or convince other inmates to do things. [Mr.] Carter may have convinced another inmate to take the blame for

---

[7] Mr. Carter avers "I never called [Defendant] Rigsby any vulgar names, nor did I incite or encourage others to do that day, because in fact, [Defendant] Rigsby is the one who refused to pass out the pods commissary, angry, after our verbal dispute about why she hadn't submitted my commissary sheet the previous week." (ECF No. 45, at 15.) Once again, "conclusory allegations or denials" such as these, "without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037 (citing *Strickler*, 989 F.2d at 1383). Moreover, Mr. Carter does not contest that he used insolent language which is sufficient for the disciplinary charge. Instead, he agrees that he had a "verbal dispute" with Defendant Rigsby. (ECF No. 45, at 15.)

8

the incident as there were no other disruptions or commotions at that time for me
to misidentify [Mr.] Carter.

(ECF No. 37-1 ¶ 7.) Defendant Rigsby avers that she wrote the charge against Mr. Carter

because he was violating institutional rules and regulations, and she did not charge him in

retaliation for his complaints. (ECF No. 37-1 ¶ 8.)

**D.     Mr. Carter's April 3, 2022 Written Complaint and April 12 Regular
        Grievances**

On April 3, 2022, Mr. Carter drafted a Written Complaint complaining that he was

having "PTSD flashbacks of Red Onion State Prison denying me showers, recreation, and

correspondence via jpay ever since [Defendant] Rigsby gave me false charges in retaliation for

filing grievance procedure written complaints for denying me my IM-2 entitlements." (ECF No.

1-3, at 4.) Mr. Carter asked to be "treated immediately." (ECF No. 1-3, at 4.) The Written

Complaint was received in the Operations Office on April 5, 2022, and on April 12, 2022, staff

noted that Mr. Carter "was seen 4-11-2022," presumably by the medical department. (ECF

No. 1-3, at 4.)

On April 12, 2022, Mr. Carter drafted a Regular Grievance naming Defendant Rigsby

complaining once again that he had "been retaliated against. This lady gave me a charge after I

filed a complaint and I reported her threats," denied him recreation, and "failed to turn in my

canteen bubble sheet." (ECF No. 1-1, at 4.) Mr. Carter indicated that he was still not receiving

his "IM-2 privileges and am now suspended from a charge I received from her." (ECF No. 1-1,

at 4.) The Regular Grievance was received in the Operations Office on April 18, 2022. (ECF

No. 1-1, at 4.)

On April 12, 2022, Mr. Carter also drafted a Regular Grievance against "mental health

services here" complaining that he was having serious mental health issues and asking to be

9

"treated immediately." (ECF No. 1-3, at 2–3.) The Regular Grievance was received in the

Operations Office on April 15, 2022, but was apparently rejected as a request for services. (ECF

No. 1-3, at 2–3.)

### E.     April 27, 2022 Disciplinary Charge

On April 27, 2022, around 2:30 p.m., Defendant Rigsby and Sgt. Trusdale[8] were

escorting an inmate to the cell 3B-17, next to Mr. Carter's cell. (ECF No. 37-1 ¶ 9; ECF No. 37-

1, at 12.) Mr. Carter stated: "Not this fucking bitch next to my fucking cell. You like piss

bitch? I gotta batch ready for you." (ECF No. 37-1 ¶ 9.) Defendant Rigsby made no comment

and closed the tray slot, but Mr. Carter had the tray slot manipulated not to close completely.

(ECF No. 37-1 ¶ 9.) Mr. Carter then opened the tray slot, and stated: "Fuck you, bitch, I

PREA'd[9] you three times now. I PREA'd you the other fucking day and I am gonna PREA

you again. I don't care if this bitch hears me talking about her bitch ass." (ECF No. 37-1 ¶ 9.)

Defendant Risgby avoided Mr. Carter and did not verbally interact with him while he was

making threatening statements to her. (ECF No. 37-1 ¶ 9.)[10]

---

[8] Sgt. Trusdale's name is spelled different ways in the record. For the sake of consistency, the Court changes it to one spelling.

[9] The PREA is the Prison Rape Elimination Act, 34 U.S.C. § 30301-30309, which addresses sexual abuse and harassment in the prison setting.

[10] Mr. Carter states: "I never threatened [Defendant] Rigsby w/any bodily fluids at all. I simply was sitting at my door talking sports w/ my neighbor in cell 3B-17, when [Defendant] Rigsby approached my cell, slamming my tray slot, repetitively yelling at me, and stuck her buttox area towards my slot cracked, and she farted." (ECF No. 45, at 15.) Mr. Carter contends that he "never had 'batch of piss' or 'any' batch of anything he attempted to throw." (ECF No. 45, at 15–16.) Nevertheless, Mr. Carter admits that he and "[Defendant] Rigsby were engaged in a[n] aggressive verbal dispute w/ each other mutually . . . however, I still never threatened or attempted to throw any fluids period at her." (ECF No. 45, at 16–17.) However, Defendant Rigsby has not averred that she saw Mr. Carter with anything that he might throw, just that Mr. Carter indicated: "You like piss bitch? I gotta batch ready for you." (ECF No. 37-1 ¶ 9.) Moreover, whether Mr. Carter actually had a container of urine or was holding a container with urine in his hand is immaterial. *See Wai Man Tom*, 980 F.3d at 1037 ("A fact is

Mr. Carter's behavior violated operating procedure and Defendant Rigsby wrote a disciplinary charge against him for: "'Threaten to commit/The spitting/throwing or otherwise transferring of bodily waste/fluids on another person' (offense code 124/198D)." (ECF No. 37-1 ¶ 10.) Defendant Rigsby submitted the charge at 2:43 p.m., and the charge was served on Mr. Carter that same day at 11:23 p.m. (ECF No. 37-1, at 12.) Defendant Rigsby avers that she charged Mr. Carter because he violated institutional rules and regulations not in retaliation for filing written complaints about her. (ECF No. 37-1 ¶¶ 10–11.) Mr. Carter refused to sign the charge. (ECF No. 1-4, at 1.)

During the institutional hearing, the hearings officer found that "[b]ased on the reporting officer's testimony and the witness statement by Sgt. Trusdale that [Mr. Carter] was cursing and being disrespectful[,] the preponderance of evidence pointed to more than 51% of the offender telling the reporting officer that he had a batch of piss ready for her." (ECF No. 37-1, at 13.) Mr. Carter was found guilty of the charge and received a fine of $10 as a penalty. (ECF No. 37-1, at 13, 15.)[11] However, on appeal, the charge was dismissed by the Warden because Mr. Carter was not provided with an appeal package within the proper timeframe. (ECF No. 37-1, at 15–16.)

Defendant Rigsby avers that "[b]ecause she work[s] in a correctional facility, [she] recognize[s] that inmates file lawsuits and/or grievances against prison staff. Litigation is part of

---

'material' if proof of its existence or non-existence would affect disposition of the case under applicable law." (quoting *Anderson*, 477 U.S. at 248)). And, while Mr. Carter did not expressly state that he was going to throw urine on her, Defendant Rigsby reasonably inferred his meaning. Notably, Mr. Carter does not deny that he made any of the other offensive statements to Defendant Rigsby.

[11] Mr. Carter contends, instead, that, he was "denied my IM-2 work privilege when I was sent to Sussex I, due to the charge [Defendant] Rigsby gave me on 4-27-2022 even after dismissed on procedural grounds on 10-21-2022 by the Warden." (ECF No. 45, at 18.)

the prison environment," and "[i]t is not a problem for [her] if [she is] named as a defendant in a lawsuit or if [she is] the subject of a grievance or complaint." (ECF No. 37-1 ¶ 12.) Defendant Rigsby explains that she does "not retaliate against any inmate for any reason, and [she] treat[s] all inmates uniformly and equally." (ECF No. 37-1 ¶ 12.)

Mr. Carter indicates that "prior to [Defendant] Rigsby filing these charges against me, I wasn't classified as an 'RHU status' inmate, and was a 'IM-2' status inmate, working daily for my pay rate of $0.45 per hour, and not subject to 24-hour segregation as I was when she filed the charges against me." (ECF No. 45, at 17.) Mr. Carter also states that he was denied "IM-2 work privilege when [he] was sent to Sussex I, due to the charge [Defendant] Rigsby gave me on 4-27-22, even after dismissed on procedural grounds on 10-21-2022 by the Warden. (ECF No. 47, at 18.)

### III.  Analysis

#### A.    First Amendment Retaliation

Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)) (some internal quotation marks omitted).  "[P]laintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ." *Adams*, 40 F.3d at 74.  Instead, a plaintiff must show "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Id.* at 75.

For Mr. Carter's claim of retaliation to survive summary judgment, he is "required to produce sufficient evidence 'that (1) [he] engaged in protected First Amendment activity, (2) [the

12

defendants] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and [the defendants'] conduct.'" *Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014) (first, third and fourth alteration in original) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)).

As to the first factor, the United States Court of Appeals for the Fourth Circuit has held that inmates engage in protected First Amendment activity when they write grievances and file lawsuits. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544–46 (4th Cir. 2017). With respect to the second factor, the determination as to whether a defendant's actions "adversely affected [the plaintiff's] First Amendment rights," *Constantine*, 411 F.3d at 499 (citation omitted), is a fact-specific inquiry, which takes into account the actors involved and their relationships. *See Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). The United States Court of Appeals for the Fourth Circuit has explained "adverse effect" as follows:

> First Amendment retaliation is actionable because "retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU of Md., Inc. v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993). Not all retaliatory conduct tends to chill First Amendment activity, however, *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995), and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a "*de minimis* inconvenience" to her exercise of First Amendment rights, *ACLU of Md.*, 999 F.2d at 786 n.6. Of course, conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, and a plaintiff need not actually be deprived of her First Amendment rights in order to establish First Amendment retaliation. *Id.*

*Constantine*, 411 F.3d at 500. "[A] plaintiff suffers adverse action" for the purposes of a First Amendment retaliation claim "if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *See id.* (citations omitted).

As to the third factor – causation – a plaintiff must produce evidence sufficient to show a causal connection between the First Amendment activity and the alleged adverse action. *See id.* at 501. Recently, the Fourth Circuit has explained that courts should apply the "burden-shifting framework of the same-decision test." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (citation omitted). "That test allocates a prima facie burden to the plaintiff to show that his protected activity was 'a substantial or motivating factor' in the defendants' action." *Id.* (citation omitted). "In order to establish this causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [his or] her engaging in protected activity." *Constantine*, 411 F.3d at 501. However, "[k]nowledge alone . . . 'does not establish a causal connection' between the protected activity and the adverse action." *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). There must also be circumstantial evidence, such as evidence that the retaliation took place within some "temporal proximity" of the protected activity, or direct evidence of a retaliatory motive. *Id.*; *see Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010).

If a plaintiff makes the showing that his protected conduct was a substantial or motivating factor, "[t]he burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity." *Shaw*, 59 F.4th at 130 (citation omitted).

### B.   Mr. Carter Fails to Meet His Prima Facie Burden of Retaliation

In Claim One, Mr. Carter contends that Defendant Rigsby "violated [Mr. Carter's] First Amendment right . . . to be free from retaliation for using his protected activity of submitting complaints . . . about [Defendant] Rigsby's threats and harassment." (ECF No. 1, at 8.) Mr. Carter argues that Defendant Rigsby wrote three disciplinary charges against him in response to

his complaints about her. The Court reviews each disciplinary charge that Mr. Carter claims is retaliatory in conjunction with Mr. Carter's written complaints about Defendant Rigsby that he cited in and provided with his Complaint. The Court notes that Mr. Carter's timeline is vague, and the connection he attempts to make between his complaints and the allegedly retaliatory disciplinary charge is, at times, difficult to follow. With respect to the March 21, 2022 disciplinary charge, as discussed below, Defendant Rigsby filed the disciplinary charge before Mr. Carter filed the complaint against her, thus, Mr. Carter fails to show this action was retaliatory.

With respect to the March 30, 2022 and April 27, 2022 disciplinary charges, as a preliminary matter, Defendant Rigsby agrees that Mr. Carter engaged in a protected activity when he filed grievances and complaints, therefore, Mr. Carter satisfies the first factor. (ECF No. 37, at 5.) Although the Court is constrained to find that Mr. Carter satisfies the second factor, an adverse action, Mr. Carter's retaliation claim falters under the third factor.

### 1.      The March 21, 2022 Disciplinary Charge Was Not Retaliatory

With respect to the March 21, 2022 charge written by Defendant Rigsby, Mr. Carter's conduct that led to her to file the charge occurred at 2:00 p.m. and Defendant Rigsby submitted the charge at 2:35 p.m. Mr. Carter alleges "[t]hat night after Plaintiff completed work, he put in a written complaint of Lt. Rigsby's threats and comments at HU-3A-3B control booth but never received a receipt for it, also explaining his fear of retaliation by Lt. Rigsby." (ECF No. 1, at 3.) Thus, the record reflects that Defendant Rigsby had written the disciplinary charge against Mr. Carter many hours before Mr. Carter filed his complaint. Contrary to Mr. Carter's argument, the record demonstrates that the March 21, 2022 disciplinary charge could not have been made in retaliation for any complaint Mr. Carter filed on the night of March 21, 2022. Accordingly, Mr.

Carter fails to show that the March 21, 2022 disciplinary charge submitted by Defendant Rigsby was retaliatory.[12]

### 2.   <u>Adverse Action</u>

For the March 30, 2022 and April 27, 2022 disciplinary charges, Mr. Carter must show a second factor, or that Defendant Rigsby's actions "adversely affected [the plaintiff's] First Amendment rights." *Constantine*, 411 F.3d at 499 (citation omitted).  Here, it is doubtful that Defendant Rigsby subjected Mr. Carter to an adverse action sufficient to establish a constitutional retaliation claim.  Nevertheless, because the record is not clear about what precise adverse action Mr. Carter experienced from the three disciplinary charges, at this juncture, the Court must decide this factor in favor of Mr. Carter.

Here, Mr. Carter must establish that Defendant Rigsby's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500 (citations omitted).  The Court acknowledges that "a plaintiff's 'actual response to the retaliatory conduct' is not dispositive of the question of whether such action would likely deter a person of ordinary firmness." *Martin v. Duffy*, 858 F.3d 239, 250 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500).  However, despite not being dispositive, "[Mr. Carter's] actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity . . . ." *Constantine*, 411 F.3d at 500.  It is abundantly clear that Mr. Carter was not deterred by the disciplinary charges filed by Defendant Rigsby.  Instead, it appears that Mr. Carter continued to complain about Defendant Rigsby through the grievance process in late March and April of 2022.  Mr. Carter fought the March 30,

---

[12] Because Defendant Rigsby wrote the disciplinary charge prior to Mr. Carter filing his complaint, there could be no adverse action and Mr. Carter's complaint was clearly not a substantial or motivating factor in her submitting the disciplinary charge.

2022 disciplinary charge and it was dismissed after a hearing on May 19, 2022 because another inmate claimed responsibility for the vulgar or insolent language. (ECF No. 37-1, at 10.) Although Mr. Carter was convicted of the April 27, 2022 disciplinary charge of threatening to throw a bodily fluid, the conviction was overturned on appeal on October 21, 2022, because Mr. Carter was not provided the appeal paperwork in accordance with Virginia Department of Corrections rules and procedures. (ECF No. 37-1, at 15.)

It is not entirely clear from the record what adverse action Mr. Carter suffered beyond having to participate in two disciplinary hearings and in the appeal process where the charges against him were dismissed. Mr. Carter indicates that "prior to [Defendant] Rigsby filing these charges against me, I wasn't classified as an 'RHU status' inmate, and was a 'IM-2' status inmate, working daily for my pay rate of $0.45 per hour, and not subject to 24-hour segregation." (ECF No. 45, at 17.) Mr. Carter indicates that his suspension from work lasted one month, and it is not clear when this happened in relation to the three disciplinary charges submitted by Defendant Rigsby. (ECF No. 45, at 17.) The record reflects that Mr. Carter was already housed in the RHU and did not have an official prison job. Mr. Carter also states that he was denied "IM-2 work privilege when [he] was sent to Sussex I, due to the charge [Defendant] Rigsby gave me on 4-27-22, even after dismissed on procedural grounds on 10-21-2022 by the Warden." (ECF No. 45, at 18.) Thus, viewing the evidence most favorably to Mr. Carter, it appears that the adverse actions from the disciplinary charges were that Mr. Carter was unable to work his unofficial pod job for one month and lost that salary, was in segregation during that time, and later upon his transfer, he was not allowed IM-2 work privilege.

Although the record does not reflect that Mr. Carter experienced any clear chilling of the exercise of his First Amendment rights, the Court assumes without deciding that losing a prison

job for one month and being in segregation is a sufficiently adverse action. Accordingly, at this

juncture, Mr. Carter has demonstrated that Defendant Rigsby's allegedly retaliatory conduct

"would likely deter 'a person of ordinary firmness' from the exercise of First Amendment

rights." *Constantine*, 411 F.3d at 500 (citations omitted).[13]

More importantly, Mr. Carter fails to demonstrate a causal connection between the

protected First Amendment activity and the adverse action. *See Constantine*, 411 F.3d at

500–01.

### 3.    <u>No Causal Connection</u>

#### a.    <u>March 30, 2022 Incident and Charge</u>

On March 30, 2022, Defendant Rigsby wrote a disciplinary charge against Mr. Carter for

his use of vulgar language while she was passing out commissary and for disrupting the pod.

Mr. Carter contends that Defendant Rigsby filed this disciplinary charge in retaliation for the

Offender Request and Written Complaint he drafted and submitted the day before on March 29,

2022. First, nothing in the record suggests that Defendant Rigsby was aware that Mr. Carter had

filled out an Offender Request and a Written Complaint when she submitted the disciplinary

charge against him on March 30, 2022. The record establishes that Mr. Carter's Offender

Request and Written Complaint were not received in the Operations Office until April 4, 2022,

---

[13] With respect to being denied IM-2 work privilege upon his transfer, the record does not show that this was an adverse action stemming from any of the three disciplinary charges filed by Defendant Rigsby. Mr. Carter has at least two other civil actions pending in this Court that reflect that Mr. Carter was involved in different altercations with staff during the summer and fall of 2022 when Mr. Carter claims he was denied IM-2 work privileges. *See, e.g., Carter v. Daughtery*, No. 3:23cv788 (E.D. Va. 2023); ECF No. 12; *Carter v. McCoy*, No. 3:24cv136 (E.D. Va. 2024); ECF No. 1; *see also* Fed. R. Evid. 201 (permitting the Court to take judicial notice of facts that are not subject to reasonable dispute). Thus, it is doubtful that Mr. Carter was refused this privilege solely from Defendant Rigsby's disciplinary charges or if the refusal of this privilege resulted from other disciplinary charges submitted by other staff during the same time period.

four days after the March 30, 2022 incident, and the charge submitted by Defendant Rigsby that

same day. (*See* ECF No. 1-1, at 1–2.)  Mr. Carter puts forth no evidence that he made Defendant

Rigsby aware that he was filing these complaints or any evidence that would suggest that

Defendant Rigsby knew he had filed them. *See Constantine*, 411 F.3d at 501 (explaining that "a

plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [his or]

her engaging in protected activity.")  Mr. Carter also points to no direct evidence of a

retaliatory motive.

   Mr. Carter fails to show that his protected activity of filing grievances was 'a substantial

or motivating factor' in [Defendant Rigsby's] action" in submitting the disciplinary charge.

*Shaw*, 59 F.4th at 130 (citation omitted).  Rather, the record demonstrates that Mr. Carter yelled

at Defendant Rigsby and used vulgar or insolent language when she attempted to hand out

commissary, and because Mr. Carter was breaking institutional rules, she filed a disciplinary

charge against him.  Despite his characterization of Defendant Rigsby's filing of the March 30,

2022 disciplinary report as retaliatory, Mr. Carter admits that he and Defendant Rigsby engaged

in a "verbal dispute about why she hadn't submitted my commissary sheets the previous week."

(ECF No. 45, at 15).   Despite his apparent belief to the contrary, (*see* ECF No. 45, at 7–8), Mr.

Carter, as inmate, has no "right to direct disrespectful comments to a prison official, whether

verbally or in writing, because the prison's legitimate penological interests in promoting order

and discipline, and in controlling violence clearly necessitate the prohibition of such comments."

*Huff v. Mahon*, 312 F. App'x 530, 532 (4th Cir. 2009); *cf. Martin v. Duffy*, 977 F.3d 294, 300

(4th Cir. 2020) (citation omitted) ("Prison officials may legitimately punish inmates who

verbally confront institutional authority without running afoul of the First Amendment.")

No reasonable juror would find that Mr. Carter's filing of the Offender Request and a Written Complaint on March 29, 2022, that was not received in the Operations Office until April 4, 2022, was a "substantial and or motivating factor" for the disciplinary charges for vulgar or insolent language lodged by Defendant Rigsby the following day. *Cf. Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993) (requiring plaintiff to show that proffered reasons were pretextual and to "carry his initial burden of proving that [engaging in the protected First Amendment activity was] a substantial factor" in the adverse action"). Mr. Carter fails to demonstrate the requisite causal connection between his filing of an Offender Request and a Written Complaint on March 29, 2022, and the disciplinary charges filed by Defendant Rigsby the following day.

### b.    April 27, 2022 Incident and Charge

Defendant Rigsby submitted the third charge on April 27, 2022, for Mr. Carter threatening to throw urine on her. Mr. Carter contends that he did not have any urine to throw at her, and that he did not threaten to throw anything on her and that this charge showed that Defendant Rigsby "continue[d] to retaliate against [Mr.] Carter for using the grievance procedure reporting her harassing and verbal threatening actions." (ECF No. 1, at 6.)[14] In his Complaint, Mr. Carter fails to directly identify a particular grievance submission that he claims resulted in the alleged retaliatory disciplinary charge on April 27, 2022. Instead, Mr. Carter cites an "appeal of intake decision K. Crosby made on April 25, 2022 upholding the level I rejected w/ the original written complaint and regular grievance attached." (ECF No. 1, at 7.) This appears to

---

[14] As explained previously, although Mr. Carter contends that he did not have a bottle or batch of urine to throw at Defendant Rigsby, Defendant Rigsby never averred that she saw Mr. Carter with anything that he might throw. Defendant Rigsby averred that Mr. Carter said to her: "You like piss bitch? I gotta batch ready for you." (ECF No. 37-1 ¶ 9.) Therefore, while Mr. Carter did not technically say that he was going to throw urine on her, Defendant Rigsby could have easily construed it this way. Mr. Carter does not contest that he used any of the other foul and threatening language.

reference a Written Complaint complaining about Defendant Rigsby that he drafted on April 3, 2022, that was rejected at intake as a "Request for Services" and referred to mental health services, and a subsequent April 12, 2022 Regular Grievance. (ECF No. 1-3.) Nothing in the record suggests that Defendant Rigsby was aware of this Written Complaint or the Regular Grievance especially because they were rejected on intake and were forwarded to mental health services. Mr. Carter offers no evidence that Defendant Rigsby was aware that he was filed this complaint and grievance.[15] Additionally, Mr. Carter once again points to no direct evidence of a retaliatory motive. Here, Mr. Carter fails to show, as he must, that "at the very least," Defendant Rigsby was aware that Mr. Carter was engaging in a protected activity. *See Constantine*, 411 F.3d at 501.

Mr. Carter concedes that he and Defendant Rigsby were in an "aggressive verbal dispute," when Defendant Rigsby wrote the charge. (ECF No. 45, at 16–17.) The record reflects that Mr. Carter yelled at Defendant Rigsby, called her vulgar names, and threatened her stating: "You like piss bitch? I gotta batch ready for you." (ECF No. 37-1 ¶ 9.) Accordingly, the record reflects that Mr. Carter's behavior on April 27, 2022, was the substantial or motivating factor in Defendant Rigsby writing the disciplinary charge. Mr. Carter had no constitutional right to engage in such belligerent behavior. *Cf. Huff*, 312 F. App'x at 532; *Martin*, 977 F.3d at 300. Based on the record, no reasonable juror could find that Mr. Carter's filing of the Written Complaint on April 3, 2022, and Regular Grievance on April 12, 2022, about his need for mental health services, were a "substantial and or motivating factor" for the disciplinary charges for

---

[15] Moreover, the third disciplinary charge submitted by Defendant Rigsby was not filed until April 27, 2022, more than three weeks after Mr. Carter submitted the Written Complaint and two weeks after the Regular Grievance. Therefore, this disciplinary charge was not in particularly close temporal proximity to his submission of the grievance materials Mr. Carter cites.

threatening to throw bodily fluid lodged by Defendant Rigsby on April 27, 2022. Therefore, Mr. Carter has failed to demonstrate the requisite causal connection between the disciplinary charge and his cited grievance materials.[16] *Cf. Wagner*, 13 F.3d at 91. In sum, Mr. Carter fails to meet his burden to show a prima facie case of retaliation.

## C. **Defendant Rigsby Would Have Taken the Same Action**

If a plaintiff makes a prima facie showing of retaliation, "[t]he burden then shifts to the defendant[] to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity." *Shaw*, 59 F.4th at 130 (citation omitted). "If a prison official shows she would have taken the same actions if the inmate engaged only in misconduct, courts logically infer legitimate reasons caused, the adverse action, not retaliatory ones." *Martin*, 977 F.3d at 302 (citing *Greene v. Doruff*, 660 F.3d 975, 979–80 (7th Cir. 2011)).

Even if Mr. Carter had met his prima facie burden to show that Defendant Rigsby's filing of disciplinary charges were in retaliation for his filing of complaints about her, which he has not, Defendant Rigsby avers that she would have taken the same action because Mr. Carter's conduct broke institutional rules. Defendant Rigsby avers that she filed the March 30, 2022 disciplinary charge against Mr. Carter for yelling at her and using vulgar or insolent language. Mr. Carter also used vulgar or insolent language and threatened to throw urine at Defendant

---

[16] In his Opposition, Mr. Carter contends that despite Defendant Rigsby arguing that Mr. Carter had failed to prove that she had any knowledge of the grievance materials Mr. Carter cites in his Complaint, she "admit[s] she had a 'PREA' complaint against her from [Mr.] Carter." (ECF No. 45, at 4.) Defendant Rigsby did not admit that Mr. Carter had filed a PREA complaint, but instead averred that in his tirade against her on April 27, 2022, that Mr. Carter threatened that he had filed and would continue to file PREA complaints against her. However, Mr. Carter did not claim that the April 27, 2022 disciplinary charge was filed as retaliation for any specific PREA complaint. Moreover, as explained above, Mr. Carter's own actions on April 27, 2022 were the substantial or motivating factor in Defendant Rigsby filing disciplinary charges against him that day.

Rigsby on April 27, 2022. Mr. Carter's behavior again violated institutional rules, leading Defendant Rigsby to write a disciplinary charge. Mr. Carter admits with respect to both the March 30, 2022 and April 27, 2022 incidents that he and Defendant Rigsby were engaged in verbal altercations, including one described by him as "aggressive." Mr. Carter has no constitutional right to engage in verbal altercations and to direct disrespectful comments to prison staff. *Huff*, 312 F. App'x at 532; *Martin*, 977 F.3d at 300. Thus, the evidence demonstrates that Defendant Rigsby would have filed disciplinary charges against Mr. Carter even if he had not filed complaints about her.

In sum, Claim One lack merits and will be DISMISSED. Accordingly, Defendant Rigsby's Motion for Summary Judgment, (ECF No. 36), will be GRANTED. Mr. Carter's Motion for Summary Judgment, (ECF No. 22), will be DENIED.

## IV. Mr. Carter's Action is Malicious

The courts are charged with dismissing an action proceeding in forma pauperis at any time during the course of the litigation that it becomes clear that the action is frivolous or malicious. 28 U.S.C. §§ 1915A, 1915(e)(2); *see also White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993). With respect to the second standard, this Court has observed that:

> A litigant may be deemed to act maliciously if his actions "[i]mport a wish to vex, annoy, or injure another, or an intent to do a wrongful act, and may consist in direct intention to injure, or in reckless disregard of another's rights." BLACK'S LAW DICTIONARY, Special Fifth Ed. at 863 (1981). Therefore, "the court must assess the character of the allegations insofar as they indicate a motive on the part of the plaintiff to merely harass or vex the defendants rather than to seek redress for a legitimate legal claim." *Daves v. Scranton*, 66 F.R.D. 5, 7 (E.D. Pa. 1975).

*Cain v. Com. of Va.*, 982 F. Supp. 1132, 1136 (E.D. Va. 1997). Further, "[t]he courts have long recognized that inmate complaints against state officials are a particularly fertile arena for frivolous and malicious litigation." *Id.* (citing *Daye v. Bounds*, 509 F.2d 66, 68 (4th Cir. 1975)).

This is true, in part, because incarcerated litigants, "possess both time and dissatisfactions in abundance." *Cochran*, 73 F.3d at 1316.  Furthermore, in assessing whether an action is malicious, the Court's review is not limited to the current complaint but is guided by the plaintiff's past litigious conduct. *Id.* at 1316–17.

Mr. Carter frequently used vulgar and insolent language and was belligerent with Defendant Rigsby.  Mr. Carter even categorized an interaction with Defendant Rigsby as "aggressive" and claims that the First Amendment permits him to engage in this behavior.  From a review of Mr. Carter's grievance material, it is evident that Mr. Carter also made pre-emptive threats that any action Defendant Rigsby took against him he would automatically consider retaliation and he would file a lawsuit.  Given the circumstances, the Court concludes that Mr. Carter initiated the current lawsuit in bad faith, and to harass and inconvenience Defendant Rigsby.  Accordingly, the Court will also dismiss the action as MALICIOUS pursuant to § 1915A(b)(1).

## V.  Outstanding Motions

### A.    Motion for Sanctions

Mr. Carter filed a "Motion for Sanction Pursuant to Rule 37", (ECF No. 56), for "spoliating evidence," (ECF No. 56, at 1).  Mr. Carter suggests that Defendant Rigsby failed to preserve surveillance video recordings for the March 21, 2022, March 30, 2022, and April 27, 2022 incidents that led to the disciplinary charges.  (ECF No. 57, at 3.)  However, Mr. Carter fails to show how the inability to obtain this evidence prejudiced his ability to prove his claim of retaliation.  Spoliation of evidence refers to "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing

24

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "The duty to preserve

material evidence arises not only during litigation but also extends to that period before litigation

when a party reasonably should know that the evidence may be relevant to anticipated

litigation." *Id.* at 591 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)); *see*

*also Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at *12–13 (E.D. Va. Jan. 21, 2017).

Federal Rule of Civil Procedure 37 governs the Court's power to sanction a party for

destroying or failing to preserve electronically stored information ("ESI"). Federal Rule

37(e) provides,

> **(e) Failure to Preserve Electronically Stored Information.** If electronically
> stored information that should have been preserved in the anticipation or conduct
> of litigation is lost partly because a party failed to take reasonable steps to preserve
> it, and it cannot be restored or replaced through additional discovery, the court:
>
> > **(1)** upon finding prejudice to another party from the loss of the information,
> > may order measures no greater than necessary to cure the prejudice; or
> >
> > **(2)** upon finding that the party acted with intent to deprive another party of the
> > information's use in the litigation may:
> >
> > > **(A)** presume that the lost information was unfavorable to the party;
> > >
> > > **(B)** instruct the jury that it may or must presume the information was
> > > unfavorable to the party;
> > >
> > > **(C)** or dismiss the action or enter default judgment.

Fed. R. Civ. P. 37(e). "The right to impose sanctions for spoliation arises from the court's

inherent power to control the judicial process and litigation, but the power is limited to that

necessary to redress conduct 'which abuses the judicial process.'" *Silvestri*, 271 F.3d at 590

(citation omitted).

Under Rule 37(e), before a court may impose sanctions, four requirements must be met.

Fed. R. Civ. P. 37(e). First, "ESI" must have been "lost." *Id.* Second, that information (or

evidence) must be of the sort that "should have been preserved in the anticipation or conduct of litigation." *Id.* Third, the evidence must have been lost "because a party failed to take reasonable steps to preserve it." *Id.* Finally, the court must find that the evidence "cannot be restored or replaced through additional discovery." *Id.* Here, it is undisputed that the video surveillance was ESI and cannot be recovered. With respect to the duty to preserve the evidence, "[i]t is well established the duty is triggered, at the latest, when the defendant is served with the complaint. However, the duty to preserve 'also extends to that period before the litigation when a party should . . . anticipate[] litigation." *Jenkins*, 2017 WL 362475, at *14 (citations omitted).

Mr. Carter filed this action in January 2023, nearly eight months after the last incident in this case, and Defendant Rigsby was not served with the Complaint until July 7, 2023. According to counsel for Defendant Rigsby, the video recordings had been long destroyed. (ECF No. 67, at 5.)[17] Defendant Rigsby explains that the video surveillance recordings are created 24-hours a day, seven days a week, from multiple locations, and are constantly being overwritten. (ECF No. 67, at 4.) The video surveillance records were destroyed in due course because the data only remains on the recorder for ninety days. (ECF No. 67, at 4–5.) There was no need to save this data because Mr. Carter's offenses were not of the type that are reportable,

---

[17] Counsel for Defendant Rigsby explained that Mr. Carter called the PREA hotline on April 27, 2022, and an investigator reviewed video from April 27, 2022 beginning at 2:04 p.m. (ECF No. 67, at 5 n.2.)

> According to the Report, [Defendant] Rigsby is seen placing an inmate into cell 3B-19 beside [Mr.] Carter's cell with Sgt. Trusdale present, and both officers exit the pod at 2:06 p.m. Sussex II, despite diligent efforts while simultaneously shutting down its operations, has not been able to locate the video clip from April 27, 2022, and it is believed to be lost. Defendant Rigsby was not the custodian of any of the video clips, and would not have been able to destroy, or conversely preserve video footage.

(ECF No. 67, at 5 n.2.)

and Mr. Carter did not ask for them to be preserved during the ninety days.  (ECF No. 67, at 5.)

Moreover, the three charges were either never served on Mr. Carter or were dismissed, providing

yet another reason why such footage would not be preserved.  Finally, Defendant Rigsby

contends that there was no duty to preserve the video surveillance recordings because they were

video only and did not record audio.  Thus, the video-only recordings would not be relevant

evidence for the charges for use or vulgar or insolent language or threatening to throw bodily

waste which were made verbally by Mr. Carter.  Therefore, it does not appear that Defendant

Rigsby could reasonably have anticipated litigation related to these dismissed charges until she

was served with the Complaint.  To the extent that the video surveillance was even within her

control, Defendant Rigsby also cannot be faulted for not taking reasonable steps to preserve

the evidence.

More importantly, no sanctions are warranted here because Mr. Carter fails to

demonstrate any prejudice from the loss of the video recordings, and Defendant Rigsby did not

act with intent to deprive Mr. Carter of this video.  Fed. R. Civ. P. 37(e)(1)–(2).

Defendant Rigsby explains that the video surveillance recordings were video only and did

not record audio.  The video-only recordings would not be relevant evidence for the charges for

use or vulgar or insolent language or threatening to throw bodily waste which were made

verbally by Mr. Carter.  The Court has already found that the March 21, 2022 incident and

disciplinary charge could not have been retaliatory.  With respect to the March 30, 2022 and

April 27, 2022, Mr. Carter agrees that he was involved in a verbal altercation with Defendant

Rigsby.  Thus, the video-only surveillance recording would not provide any relevant evidence of

what was said even if it somehow reflected an argument.  Therefore, the Court finds no prejudice

to Mr. Carter from the loss of these video-only recordings. For this reason alone, Mr. Carter is not entitled to sanctions.

The Court also "can[not] fin[d] that [Defendant Rigsby] acted with intent to deprive [Mr. Carter] of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). The video surveillance recordings are created 24-hours a day, seven days a week, from multiple locations, and are constantly being overwritten. The video surveillance records were destroyed in due course because the data only remains on the recorder for ninety days. There was no need to save this data because Mr. Carter's offenses were not of the type that are reportable, and Mr. Carter did not ask for them to be preserved during the ninety days. Moreover, the charges were all dismissed well before Mr. Carter filed this litigation. Mr. Carter filed this action in January 2023, nearly eight months after the last incident in this case, and Defendant Rigsby was not served with the Complaint until July 7, 2023. According to counsel for Defendant Rigsby, the video recordings had already been long destroyed. From his many actions both open and closed in this Court, it is evident that Mr. Carter has had many incidents with prison staff and other inmates alike during his incarceration and the Court discerns that it would be nearly impossible to save surveillance recordings every time Mr. Carter had an incident. Mr. Carter fails to show that Defendant Rigsby, to the extent that she even had control over the surveillance video, acted with the requisite intent to deprive Mr. Carter use of the video for this litigation. Accordingly, the Motion for Sanction Pursuant to Rule 47, (ECF No. 56), is DENIED.

### B.    Motion to Compel Discovery

Mr. Carter also filed a Motion to Compel Discovery. (ECF No. 59.) Mr. Carter indicates that he requested disciplinary reports, PREA reports, CORIS logs and reports, his commissary record, audio recordings of his disciplinary hearings from counsel, and "all requested discovery

28

material related to retaliation." (ECF No. 59, at 2–10.) Mr. Carter claims that this discovery "is

being denied to me." (ECF No. 60, at 2.) Defendant Rigsby responded and explains that she

does not have access to PREA reports,[18] but provided the requested commissary purchase

reports, and noted that there were no CORIS logs or reports responsive to Mr. Carter's request.

(ECF No. 66, at 3–4, 5.) Defendant Rigsby avers that "[o]n May 9, 2024, [Mr.] Carter was

allowed to listen to the audio recordings of the disciplinary hearings . . . . [Mr.] Carter, however,

became angry and told the officer to 'put him down as a refusal.' [Mr.] Carter refused to sign the

form acknowledging that he had been allowed to hear the audio recordings." (ECF No. 66, at 4–

5.) The remainder of the discovery Mr. Carter asks the Court to compel Defendant Rigsby to

provide were not made in the discovery requests that he served on Defendant Rigsby. (ECF

No. 66, at 3, 9.) Thus, it appears that Defendant Rigsby has provided Mr. Carter with the

discovery that is responsive to Mr. Carter's requests. The Motion to Compel, (ECF No. 59), will

be DENIED.

## C.   **Remaining Motions**

The Motion for Settlement Conference, (ECF No. 61), will be DENIED. Mr. Carter's

"request for leave to file this reply" to the response to his Motion for Sanctions, (ECF No. 68),

will be GRANTED, to the extent that the Court has reviewed his reply. The Motion to

Withdraw, (ECF No. 69), will be GRANTED, and Richard C. Vorhis, Esquire shall be

terminated as an attorney for Defendant Rigsby. The Clerk shall discontinue the ECF notices to

Mr. Vorhis. Finally, Mr. Carter's rebuttal or "Objection to ECF No. 70," (ECF No. 73), is

---

[18] Despite Defendant Rigsby's objection and her inability to access PREA reports, the VDOC provided Mr. Carter with "a copy of the PREA Investigative Report regrading [Mr.] Carter's unfounded complaint that [Defendant] Rigsby was harassing him." (ECF No. 66, at 3–4.)

nothing more than his disagreement with the Court's prior rulings and is OVERRULED for the reasons previously explained to Mr. Carter.  (*See* ECF Nos. 62, 70.)

### VI.  Conclusion

Mr. Carter's Motion for Summary Judgment, (ECF No. 21), will be DENIED.  Defendant Rigsby's Motion for Summary Judgment, (ECF No. 36), will be GRANTED.  Mr. Carter's "request for leave to file this reply," (ECF No. 68), will be GRANTED.  The Motion to Withdraw, (ECF No. 69), will be GRANTED.  The remaining motions, (ECF Nos. 56, 59, 61), will be DENIED and the "Objection to ECF No. 70," (ECF No. 73), will be OVERRULED.  Mr. Carter's claim will be DISMISSED.  The action will be DISMISSED.  The Clerk will be DIRECTED to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 08/09/2024
Richmond, Virginia

M. Hannah Lauck
United States District Judge